

NUMBER 13-16-00400-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

KARL DEAN STAHMANN,                                                     **Appellant,**

**v.**

THE STATE OF TEXAS,                                                     **Appellee.**

### On appeal from the 207th District Court
### of Comal County, Texas.

# O P I N I O N

### Before Justices Rodriguez, Contreras, and Benavides
### Opinion by Justice Contreras

Appellant Karl Dean Stahmann was convicted of tampering with physical evidence, a third-degree felony. *See* TEX. PENAL CODE ANN. § 37.09 (West, Westlaw through 2017 1st C.S.). He was sentenced to ten years' imprisonment, with the sentence suspended and community supervision imposed for ten years. Stahmann raises seventeen issues on appeal, arguing that: (1) the evidence was insufficient to support the conviction; (2)

the trial court erred in denying his motion to quash part of the indictment; (3) the trial court erred in denying certain jury charge instructions; (4) his conviction was barred by the doctrine of collateral estoppel; and (5) the prosecutor made improper arguments.

We find insufficient evidence to support the tampering conviction, but sufficient evidence to support a conviction for attempted tampering with physical evidence. Accordingly, we reverse and remand.[1]

## I. BACKGROUND

This case arises from a two-vehicle collision on State Highway 46 outside of New Braunfels. Norberto Gonzalez testified that he was driving his SUV with his wife and son as passengers, on July 1, 2012 at around 4:30 p.m., when he saw a van approaching from the opposite direction. Gonzalez testified that he saw the van "starting to turn toward us, and I'm thinking maybe he sees me; he'll stop. But he kept going, and we hit each other." Gonzalez stated the van did not have its turn signal activated. He testified he was driving around fifty miles per hour at the time, that it had been raining earlier in the day, and that the van was slowing down as it started to turn. After the collision, Gonzalez remembered the SUV spinning around and the air bag deploying. He saw blood on the windshield of the van and on the face of its driver. On cross-examination, Gonzalez stated that there was a housing subdivision off to the side of the road, into which it appeared the van was turning. He conceded that he had not told police that the van did not have its turn signal activated.

Two bystanders, Ronnie Ballard and Michael Freeman, arrived at the scene and

---

[1] This appeal was transferred from the Third Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

2

called 911. Ballard testified that he saw two people inside the van. When Ballard approached the van, the driver—whom Ballard identified as Stahmann—exited. Stahmann was bleeding from his forehead, was "very upset" and "agitated," and "was complaining he couldn't see out of one eye." Ballard testified that he was about ten or fifteen feet away from Stahmann when he observed the following:

> The driver walked towards the fence that was—there was a gated fence right near the accident scene. At that time, I saw him throw something over the—over the fence into—near a tree into some small, you know, kind of shrubbery at the bottom of that tree. It looked like—looked to be, like, a prescription medicine bottle. . . . [A]s I walked over towards to see—you know, kind of get a better look to see, you know, where the bottle had went, he started asking me what I was doing over there, what was I looking for, why am I over there. You know, he was angry. . . . [H]e wanted us to call his dad. He kept asking to leave and go—he said, I just live right up—my dad lives right up the street. I need to go see him. I need to leave here. And we just kept asking [sic] him, No. You need to stay until somebody arrives on the scene.

Ballard also stated that, when he and Freeman came upon the scene, he saw opened beer cans inside the van, and he noticed that a couple of the cans had fallen out of the van. He stated that Stahmann seemed "disheveled from the accident" but otherwise did not appear confused or disoriented.

Freeman testified that Stahmann did appear confused and disoriented and was "bleeding real bad" from his head. Freeman tried calling Stahmann's father, at Stahmann's request, but there was no answer. Freeman corroborated Ballard's account that Stahmann threw what appeared to be a prescription medication bottle over the wire fence next to the accident scene. Freeman stated that, as he and Ballard were walking away from where the pill bottle was, Stahmann "got real nervous and started questioning us, why we were over there and what were we looking for."

Terry Aikman, a retired paramedic, was passing by the accident scene and

3

stopped to give assistance. He testified that Stahmann had a large gash over his left eye and was bleeding profusely. According to Aikman, Stahmann did not appear intoxicated but seemed to be "unaware of his situation" due to shock. He stated that, pursuant to his training, he asked Stahmann four questions to test whether he was "alert and oriented"—"the president, the day, the month, what year"—and that Stahmann answered all of the questions correctly, indicating that "he's aware of his surroundings" even though he was in pain.

According to Ballard and Freeman, when police arrived, they advised officers that they saw Stahmann throw something over the fence, and they pointed out where it was. Police were able to retrieve the item that was thrown over the fence—an ordinary orange prescription medication bottle with a label and a white cap. The officer who retrieved the bottle stated that it was sitting on top of the grass on the other side of the fence. The bottle contained four intact white tablets along with several broken ones and some powder. The label on the bottle stated the name "James Castaneda" and listed its contents as "promethazine tab 25 mg." A Department of Public Safety chemist tested the pills and determined that they contained promethazine, a prescription cough suppressant. The chemist testified that promethazine is classified as a "dangerous drug" and that it is illegal to possess it without a prescription.

The jury charge included instructions on the offenses of tampering with physical evidence and attempted tampering with physical evidence. The jury found Stahmann guilty of the former offense and, pursuant to the charge instructions, did not answer the question regarding the latter offense. This appeal followed.

4

## II. DISCUSSION

### A.      Evidentiary Sufficiency

By his first issue on appeal, Stahmann argues that there was insufficient evidence to support his conviction for tampering with physical evidence.  By his second issue, he contends that the trial court erred by denying the motion for instructed verdict he filed at the close of evidence.  We address the issues together.  *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (noting that "a complaint about overruling a motion for directed/instructed verdict is in actuality an attack upon the sufficiency of evidence to sustain the conviction").

#### 1.      Standard of Review and Applicable Law

In reviewing sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  We resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony.  *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West, Westlaw through 2017 1st C.S.) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony.").  We determine, based upon the cumulative force of all of the evidence, whether the necessary inferences made by the jury are reasonable.  *Griffin*, 491 S.W.3d at 774.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240.

Here, a hypothetically correct charge authorized by the indictment would instruct the jury to find Stahmann guilty of tampering with physical evidence if: (1) knowing that an investigation or official proceeding was pending or in progress, (2) he altered, destroyed, or concealed a bottle of pills (3) with intent to impair its verity or availability as evidence in the investigation or official proceeding; or (1) knowing that an offense was committed, (2) he altered, destroyed, or concealed a bottle of pills (3) with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense. *See* TEX. PENAL CODE ANN. § 37.09(a)(1), (d)(1); *see also Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) ("It is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted."); *Anderson v. State*, 717 S.W.2d 622, 631 (Tex. Crim. App. 1986) (noting that it is proper for an indictment to allege various manners and means of committing an offense in the conjunctive, and for those different methods of committing the offense to be charged to the jury in the disjunctive).

A person acts with knowledge with respect to circumstances surrounding his conduct when he is aware that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b) (West, Westlaw through 2017 1st C.S.). A person acts with intent with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a).

### 2. Destroyed, Altered, or Concealed

Stahmann first argues that the evidence was insufficient to show that he destroyed, altered, or concealed the bottle of pills, as alleged in the indictment. The State concedes that there was no evidence that Stahmann destroyed the bottle. *See Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008) (interpreting "destroyed" as "ruined and rendered useless"). It argues instead that the evidence was sufficient to allow jurors to conclude that he altered or concealed the bottle.

"Alter" is not defined by statute but may be commonly understood to mean "to change; make different; modify." *Id.* (citing WEBSTER'S UNABRIDGED DICTIONARY at 52 (2nd ed. 1983)); *see Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (noting that "undefined statutory terms are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance"). The State notes that, according to photographs admitted as evidence at trial, the label on the pill bottle was partially torn and its text partially smeared when it was recovered by police. The State cites *Blanton v. State*, No. 05-05-01060-CR, 2006 WL 2036615 (Tex. App.—Dallas July 21, 2006, pet. ref'd) (not designated for publication), in arguing that it was reasonable for the jury to infer that this "alteration" was caused by Stahmann throwing the bottle over the fence and onto the ground. In *Blanton*, the

7

appellant threw two plastic baggies out of his window as he was being pursued for a traffic violation. *Id.* at *1. Police later recovered the baggies, which were ripped but still contained a measurable amount of cocaine and marijuana. *Id.* The Dallas Court of Appeals held that there was sufficient evidence to show that appellant "altered" the baggies because, even though there was no evidence as to the appearance of the baggies prior to the time they were thrown out of the car window, the jury could rationally infer that the rips in the bags were caused by appellant. *Id.* at *2.

The State contends that, as in *Blanton*, the jury in this case could have reasonably inferred that Stahmann altered the pill bottle from evidence that (1) he threw the bottle over the fence, (2) it had been raining earlier in the day, and (3) some of the text printed on the label had been smudged.[2] We disagree. There was no evidence indicating what the bottle looked like prior to the time Stahmann threw it over the fence, and although the evidence established that it had been raining earlier in the day, there was nothing showing that the area where the pill bottle was recovered was wet or that Stahmann's throw could have otherwise caused the smudges. For the jury to conclude from the evidence that Stahmann altered the bottle would therefore be an unreasonable inference, amounting to no more than mere speculation. *See Gross v. State*, 380 S.W.3d 181, 188 (Tex. Crim. App. 2012) ("Juries are permitted to draw reasonable inferences from the evidence, but they are not permitted to draw conclusions based on speculation."). *Blanton* is distinguishable because the allegedly altered pieces of evidence in that case—ripped

---

[2] According to photographs, the bottle label appears to have one letter (the "s" in the phrase "as needed") and one number (a digit in the prescription number) smudged to the point of illegibility. The side of the label is also partially torn, partially obscuring two letters. The remainder of the label, including the entirety of the name of the medication and the individual to which it was prescribed, is legible. Indeed, two of the State's witnesses read from the label at trial without difficulty.

8

bags of drugs—were in a functionally useless state when they were recovered. *See* 2006 WL 2036615, at *2. It was reasonable for the jury in *Blanton* to have inferred that the rips in the bags were caused when the appellant threw them out of his car window, because it is reasonable to assume that the appellant would not have been carrying his drugs around in already-ripped bags. Here, there is no similar reason for the jury to have assumed that the pill bottle's label was intact—that is, that it had no tears or smudging— prior to the time it was thrown.

Next, we consider whether there was sufficient evidence that Stahmann concealed the pill bottle. Like "alter," "conceal" is not defined by statute, but the term may be generally understood as "to hide, to remove from sight or notice, or to keep from discovery or observation." *Thornton v. State*, 401 S.W.3d 395, 398 (Tex. App.—Amarillo 2013), *rev'd on other grounds*, 425 S.W.3d 289 (Tex. Crim. App. 2014); *Rotenberry v. State*, 245 S.W.3d 583, 588–89 (Tex. App.—Fort Worth 2007, pet. ref'd); *see also Villarreal v. State*, No. 13-15-00014-CR, 2016 WL 8919852, at *5 (Tex. App.—Corpus Christi Dec. 8, 2016, no pet.) (mem. op., not designated for publication). In *Thornton*, the Amarillo Court of Appeals found insufficient evidence of concealment where the appellant pulled a crack pipe from his pocket and dropped it to the ground in the presence of two police officers, because the pipe never left the officers' sight. 401 S.W.3d at 397, 399–400. In *Villarreal*, this Court found insufficient evidence of concealment where the appellant took a pill bottle out of his pocket and tossed it underneath a car while being pursued by a Wal-Mart loss prevention officer. 2016 WL 8919852, at *1–2 (noting that the loss prevention officer testified that the pill bottle "was not hidden in any way").

We find the instant case to be analogous to *Thornton* and *Villarreal*. Ballard testified that he observed Stahmann throw the pill bottle over the fence and into some "shrubbery at the bottom" of a tree, but he stated that the fence was a "chain fence," not a "full fence," and that he "could see all the way to the ground on the other side." Freeman testified that he saw the pill bottle in Stahmann's hand, in the air, and on the ground on the other side of the fence. He agreed that he "never lost sight of it" and that he pointed it out to police as soon as they arrived. Freeman stated that he could see it "[as] plain as day right there in the—he tried to throw it in the brush, but it didn't make it."

Comal County Sheriff's Deputy Chris Koepp, the first officer to arrive on scene, testified that when he arrived he "[o]bserved an object over the fence." He agreed that he was "able to very clearly see it" and he was able to identify it as an orange prescription medication bottle with a label and a white cap. Koepp agreed with the prosecutor that the bottle had been "concealed," but on cross-examination, he explained that the pill bottle was "sitting above the grass." He stated that he could see the bottle through the fence. According to Koepp, a fellow officer tried unsuccessfully to retrieve the bottle through the fence using an extendable baton, but the officers were eventually able to retrieve the bottle by gaining access through a nearby gate.

There was no evidence from which a juror could have reasonably inferred that the pill bottle was ever hidden, removed from sight or notice, or kept from discovery or observation. *See Thornton*, 401 S.W.3d at 398; *see also Thornton*, 425 S.W.3d at 307 (Keller, P.J., concurring) ("Whatever else 'conceal' might mean in the context of the tampering with evidence statute, it at least means to remove from sight.").[3] Instead, the

---

[3] Koepp's testimony in which he agreed with the prosecutor that the bottle was "concealed" does not alter this conclusion. *See Buntion v. State*, 482 S.W.3d 58, 74 (Tex. Crim. App. 2016) (noting that

evidence established that the pill bottle remained in full sight of bystanders from the time it was thrown by Stahmann, and of police from the time they arrived, until the time it was retrieved as evidence.

The State cites *Munsch v. State*, No. 02-12-00028-CR, 2014 WL 4105281, at *8 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.) (mem. op., not designated for publication) and *Lujan v. State*, No. 07-09-0036-CR, 2009 WL 2878092, at *2 (Tex. App.—Amarillo Sept. 9, 2009, no pet.) (mem. op., not designated for publication). These unpublished cases are distinguishable or inapposite. In *Munsch*, the appellant was a passenger in a car stopped by police. 2014 WL 4105281, at *1. The driver of the car told police at the scene that, as police were in pursuit, the appellant had thrown a bag of methamphetamine out of the passenger-side window; police then went back and retrieved the bag, which contained eighteen grams of methamphetamine. *Id.* at *2. The court found sufficient evidence that appellant concealed the bag from the officers, noting that the officers "may never have returned to locate it" had the driver not informed them of its existence, and that the officer who retrieved the bag "had difficulty locating it with his flashlight given the darkness of night." *Id.* at *8. The State argues that the instant case is similar because, as in *Munsch*, the officers were only made aware of the existence of the allegedly concealed evidence when a "third-party witness volunteered the information." But there is nothing in this case indicating that the officers would not have found the pill bottle had

---

conclusory allegations have little persuasive value); *Dallas Ry. Terminal Co. v. Gossett*, 294 S.W.2d 377, 380–81 (Tex. 1956) (stating that "the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection"); *see also Yarbrough v. State*, No. 07-14-00044-CR, 2015 WL 2256196, at *3 (Tex. App.—Amarillo May 13, 2015, no pet.) (mem. op., not designated for publication) (noting, in finding insufficient evidence to support a finding that appellant "destroyed" evidence where he swallowed a bag of marijuana, that an officer's testimony that the substance was "destroyed" was "a mere naked and unsupported conclusion" which has no probative value).

11

Ballard and Freeman not alerted them to it. Instead, the testimony unanimously established that the pill bottle was plainly visible from the accident site, and that it was not difficult to locate in the afternoon daylight.

In *Lujan*, the appellant, while being stopped by an officer who suspected a drug transaction, made a throwing motion, and the officer then found a crack pipe on the ground. 2009 WL 2878092, at *1. The court noted that, even though the crack pipe was "both intact and visible," the jury could have lawfully inferred that "appellant attempted to prevent the pipe's discovery by throwing it away"; therefore, the evidence was sufficient to support concealment. *Id.* at *2. In that case, the Amarillo court conflated the *actus reus* and the *mens rea* of the offense, apparently taking evidence of the latter as sufficient to support an affirmative finding on the former. *See id.* (citing *Lewis v. State*, 56 S.W.3d 617, 625 (Tex. App.—Texarkana 2001, no pet.)).[4] We disagree with *Lujan* to the extent it implies that concealment may be established by mere evidence of the defendant's intent. Concealment and intent are separate elements of the offense and must each be supported by sufficient evidence. We further disagree with the *Lujan* court to the extent it implies that evidence of an attempt to conceal is sufficient to show actual concealment. *See id.* (noting that the jury could have inferred that "appellant attempted to prevent the pipe's discovery by throwing it away" and stating it was immaterial "that the motion in

---

[4] The *Lujan* court, in discussing whether the evidence was sufficient to show concealment, cited *Lewis v. State* for the proposition that "to be criminal, the conduct need not result in the destruction or loss of the evidence; rather, the accused need only act with the intent to impair its verity or availability as evidence." *Lujan v. State*, No. 07-09-0036-CR, 2009 WL 2878092, at *2 (Tex. App.—Amarillo Sept. 9, 2009, no pet.) (mem. op., not designated for publication) (citing *Lewis v. State*, 56 S.W.3d 617, 625 (Tex. App.—Texarkana 2001, no pet.)). In *Lewis*, the court found sufficient evidence of concealment where the appellant, while being stopped by police, put a bag of cocaine in his mouth, swallowed it, and refused to spit it out. 56 S.W.3d at 619. The *Lewis* court held separately that there was sufficient evidence to show the appellant's culpable intent. *See id.* Nowhere did it suggest that evidence of the appellant's intent was alone sufficient to show the *actus reus* of concealment.

12

which [appellant] engaged was insufficient to actually prevent the officer from finding or retrieving the pipe"). Actual concealment requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation. *See Thornton*, 401 S.W.3d at 398. Such evidence was lacking here.

Finally, the State directs us to a case arising out of the same accident, in which Stahmann was found to have violated the terms of his unrelated community supervision by, among other things, tampering with physical evidence on July 1, 2012. *See Stahmann v. State*, No. 03-15-00068-CR, 2016 WL 3974567, at *1 (Tex. App.—Austin July 19, 2016, pet. ref'd) (mem. op., not designated for publication). There, the Austin Court of Appeals stated that "the trial court heard conflicting testimony about whether the pill bottle was visible where it landed on the other side of the fence" and "could have credited the testimony that the bottle 'got submerged down in some brush area' and was concealed by the bushes." *Id.* at *3. But no such testimony appears in the record before this Court. In our evaluation of the sufficiency of the evidence, we may not credit testimony that was not before the trier of fact at the guilt-innocence stage. *See Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001).

For the foregoing reasons, we conclude that the evidence adduced at trial was insufficient to support a finding that Stahmann destroyed, altered, or concealed the pill bottle. We sustain this part of his first two issues.

### 3. Knowledge and Intent

Stahmann additionally challenges the sufficiency of the evidence to support other elements of the charged offense.[5] First, he argues the evidence was insufficient to

---

[5] Ordinarily, having found insufficient evidence of one of the essential elements of the offense, we would cease our analysis and render judgment of acquittal. *See, e.g., Marra v. State*, 399 S.W.3d 664, 673

13

support the jury's finding that he acted with knowledge that an investigation or official proceeding was pending or in progress. *See* TEX. PENAL CODE ANN. § 37.09(a)(1). Next, he argues the evidence was insufficient to support a finding that he either: (1) intended to impair the verity or availability of the pill bottle as evidence in the investigation or official proceeding; or (2) intended to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense. *See id.* § 37.09(a)(1), (d)(1).

The jury was charged in this case under both subsections (a)(1) and (d)(1) of penal code section 37.09. Knowledge "that an investigation or official proceeding was pending or in progress" is an essential element under subsection (a)(1), but not under subsection (d)(1). *See id.* Knowledge "that an offense has been committed" is an essential element under subsection (d)(1), *see id.* § 37.09(d)(1), but Stahmann does not challenge the sufficiency of the evidence as to this element.[6]

We find the evidence sufficient to establish knowledge under section 37.09(a)(1). In the context of this statute, "pending" means "impending, or about to take place." *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (noting that it is presumed that every word in a statute has been used for a purpose, and interpreting "pending" in such a way as to "avoid redundancy from use of the terms 'pending' and 'in progress'" in the statute); *see Barrow v. State*, 241 S.W.3d 919, 923 (Tex. App.—Eastland 2007, pet. ref'd) (citing *Lumpkin*, 129 S.W.3d at 663); *see also Carr*

---

(Tex. App.—Corpus Christi 2013, no pet.). Here, however, the State argues that we may reform the judgment to reflect a conviction for attempted tampering if we find sufficient evidence for that offense but insufficient evidence for the completed offense of tampering. For reasons discussed further herein, we agree with the State, and we will therefore address the other elements of the attempted tampering offense.

[6] Stahmann does argue that the jury was required to be unanimous as to which "offense" he knew was committed. We address that issue *infra* section II.C.

14

*v. State*, No. 03-14-00234-CR, 2016 WL 465192, at *6 n.3 (Tex. App.—Austin Feb. 5, 2016, pet. ref'd) (mem. op., not designated for publication) ("The *Lumpkin* court's choice makes sense as the statute might otherwise implement a policy that allows criminals to freely destroy evidence of their wrongdoing before they actually know law enforcement officials are looking for such evidence even if they strongly suspect an investigation will occur."). The jury could have reasonably inferred that, having just been involved in a high-speed collision causing injury, Stahmann knew that a police investigation into the accident was about to take place when he threw the pill bottle.

Under subsection (a)(1), the State was additionally required to prove that Stahmann acted with intent to "impair [the] verity or availability [of the pill bottle] as evidence in the investigation or official proceeding." TEX. PENAL CODE ANN. § 37.09(a)(1). Under subsection (d)(1), the State was additionally required to prove that Stahmann acted with intent "to impair [the] verity, legibility, or availability [of the pill bottle] as evidence in any subsequent investigation of or official proceeding related to the offense." *Id.* § 37.09(d)(1).

Intent may generally be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Here, the bystanders who first came upon the accident scene testified that, after they saw Stahmann throw the pill bottle over the fence, Stahmann became "angry" and "nervous." According to Ballard, Stahmann expressed his desire to leave the scene of the accident. Ballard also stated that he saw open beer cans in Stahmann's vehicle, as well as some which had fallen out of the vehicle as a result of the accident. From this circumstantial evidence, a rational juror could have concluded beyond a reasonable doubt

that, when he threw the pill bottle, Stahmann's conscious objective or desire was to impair the pill bottle's availability as evidence in the investigation or official proceeding which he knew was pending or in progress. *See* TEX. PENAL CODE ANN. §§ 6.03(a), 37.09(a)(1). Alternatively, a rational juror could have concluded beyond a reasonable doubt that, when he threw the pill bottle, Stahmann's conscious objective or desire was to impair the pill bottle's availability as evidence in any subsequent investigation of, or official proceeding related to, the offense which he knew had just been committed. *See id.* §§ 6.03(a), 37.09(d)(1).

### 4. Reformation

The State argues that, in the event we find insufficient evidence of the completed offense of tampering but sufficient evidence of the lesser-included offense of attempted tampering, we should reform the judgment to reflect conviction on the latter offense. *See* TEX. PENAL CODE ANN. § 15.01(a) (West, Westlaw through 2017 1st C.S.) ("A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."); *see also id.* § 15.01(c) ("It is no defense to prosecution for criminal attempt that the offense attempted was actually committed."). Stahmann contends by his third issue that we may not do so under these circumstances.

If an appellate court concludes that the evidence was legally insufficient to support a conviction, it must determine whether the judgment should be reformed to reflect a conviction for a lesser-included offense. *See Canida v. State*, 434 S.W.3d 163, 166 (Tex. Crim. App. 2014). As the court of criminal appeals explained in *Thornton*, reformation of the judgment is required if two prongs are satisfied: (1) in the course of convicting the

16

appellant of the greater offense, the jury must have necessarily found every element necessary to convict the appellant for the lesser-included offense; and (2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, there is sufficient evidence to support a conviction for the lesser-included offense at trial. *Thornton*, 425 S.W.3d at 289, 300. An outright acquittal under these circumstances would be unjust because the result would involve usurping the fact finder's determination of guilt. *Id.* at 298. A court of appeals should limit the use of judgment reformation to those circumstances when the commission of a lesser offense can be established from the facts that the jury actually found. *Id.*

Stahmann argues that the first prong of *Thornton* cannot be satisfied because subsections (a)(1) and (d)(1) of penal code section 37.09 each have distinct essential elements that the other subsection does not. He notes that other cases in which a tampering conviction was reformed to attempted tampering involved allegations made under only one subsection. *See Rabb v. State*, 483 S.W.3d 16, 18 (Tex. Crim. App. 2016) (appellant was charged only under subsection (a)(1)); *Thornton*, 401 S.W.3d at 398 (appellant was charged only under subsection (d)(1)). This case differs in that the jury was charged on two different manners of committing the tampering offense, but we find that this difference does not preclude reformation under *Thornton*. The jury was instructed to convict if it found all of the essential elements under either subsection, and it did convict; therefore, we presume that it found all of the essential elements under at least one subsection. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (observing that reviewing courts "generally presume the jury follows the trial court's instructions in the manner presented"). With that presumption in mind, we proceed to

consider whether the jury, by its verdict, necessarily found all the elements of the attempted tampering offense. *See Thornton*, 425 S.W.3d at 289.

If the jury found Stahmann guilty under subsection (a)(1), the first prong of the *Thornton* reformation analysis is satisfied only if the jury, by its verdict, must necessarily have found that Stahmann: (1) knowing that an investigation or official proceeding was pending or in progress, (2) with specific intent to alter, destroy, or conceal the pill bottle and (3) with specific intent to impair its availability as evidence in the investigation or official proceeding, (4) did an act amounting to more than mere preparation that (5) tended to result in alteration, destruction, or concealment of the pill bottle. *See* TEX. PENAL CODE ANN. §§ 15.01(a), 37.09(a)(1); *Rabb*, 483 S.W.3d at 22; *Thornton*, 425 S.W.3d at 300–301. We conclude that this prong is satisfied with respect to subsection (a)(1). The first and third elements were explicitly found by the jury as essential elements of the completed tampering offense.[7] The jury's verdict also necessarily implied affirmative findings as to the second,[8] fourth,[9] and fifth[10] elements required for the first prong of the reformation analysis. *See Thornton*, 425 S.W.3d at 300–302.

---

[7] As noted, if the jury found Stahmann guilty under subsection (a)(1), then it explicitly found that: (1) knowing that an investigation or official proceeding was pending or in progress, (2) Stahmann altered, destroyed, or concealed a bottle of pills (3) with intent to impair its verity or availability as evidence in the investigation or official proceeding. *See* TEX. PENAL CODE ANN. § 37.09(a)(1) (West, Westlaw through 2017 1st C.S.).

[8] The *Thornton* Court noted that "[a]n actor could not harbor an intent to impair the availability of the evidence, carry out that intent by means of concealment, and yet *not* have had a 'conscious objective' to conceal the evidence." *Thornton v. State*, 425 S.W.3d at 300 n.59 (Tex. Crim. App. 2014). That is, a finding that an actor concealed evidence with the intent to impair its availability necessarily implies a finding that the actor had the specific intent to conceal the evidence. *See id.*

[9] *See id.* at 301–02 ("Similarly, with respect to the fourth element, we have no difficulty in concluding that the jury must have found this predicate-element to attempted tampering—an act amounting to more than mere preparation—to have been proven, since it found that his intentional conduct succeeded in concealing the pipe.").

[10] *See id.* at 302 (citing TEX. PENAL CODE ANN. § 15.01(c) (West, Westlaw through 2017 1st C.S.)) ("[B]y operation of Section 15.01(c), the jury's finding of actual commission subsumes a finding that the appellant's conduct 'tend[ed] but fail[ed]' to effect the commission of tampering with evidence. And in this

For the same reasons, we also conclude that the first prong of the *Thornton* reformation analysis is satisfied if the jury found Stahmann guilty under subsection (d)(1).[11]  If the jury found guilt under that subsection, then the first *Thornton* prong would be satisfied only if the jury, by its verdict, necessarily found that Stahmann:  (1) knowing that an offense was committed, (2) with specific intent to alter, destroy, or conceal the pill bottle and (3) with specific intent to impair its availability as evidence in any subsequent investigation of or official proceeding related to the offense, (4) did an act amounting to more than mere preparation that (5) tended to result in alteration, destruction, or concealment of the pill bottle.  *See* TEX. PENAL CODE ANN. §§ 15.01(a), 37.09(d)(1); *Rabb*, 483 S.W.3d at 22; *Thornton*, 425 S.W.3d at 300–301.  Again, the first and third elements of attempt were explicitly found by the jury as essential elements of the completed offense, and the remaining elements of attempt were necessarily found as a result of the jury's other findings.  *See Thornton*, 425 S.W.3d at 300–302, 300 n.59.

The first prong of *Thornton* is satisfied, whether the jury found Stahmann guilty under subsection (a)(1), subsection (d)(1), or both.  We further find that the second prong of *Thornton* is satisfied because the evidence, as outlined fully above, was sufficient to support the offense of attempted tampering with physical evidence, including the specific intent element and the "act amounting to more than mere preparation" element, whether under subsection (a)(1) or (d)(1) of section 37.09 of the penal code.  *See* TEX. PENAL CODE ANN. §§ 15.01(a), 37.09(a)(1), (d)(1).

---

sense, the jury must necessarily have found that the appellant's actions 'tend[ed] but fail[ed].'").

[11] As noted, if the jury found Stahmann guilty under subsection (d)(1), then it explicitly found that: (1) knowing that an offense was committed, (2) he altered, destroyed, or concealed a bottle of pills (3) with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense.  *See* TEX. PENAL CODE ANN. § 37.09(d)(1).

The offense of criminal attempt is one category lower than the offense attempted. TEX. PENAL CODE ANN. § 15.01(d). Therefore, the judgment in this case should be reformed to reflect a conviction for a state-jail felony. *See id.* § 12.04(a) (West, Westlaw through 2017 1st C.S.); *id.* § 37.09(c). Stahmann's third issue is overruled.

**B. Motion to Quash Indictment**

By his fourth issue, Stahmann argues that the trial court erred by denying his motion to quash the second paragraph of Count IV of the indictment.[12] Tracking penal code section 37.09(d)(1), this paragraph alleged that Stahmann, "knowing that an offense had been committed, did then and there alter, destroy or conceal a thing, to-wit: a bottle of pills, with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of official proceeding related to said offense." *See* TEX. PENAL CODE ANN. § 37.09(d)(1). Stahmann argued in his motion to quash that, because this paragraph did not specify which "offense" had been committed, it did not sufficiently inform him of the allegations against him. He contends on appeal that, in order to provide adequate notice of a charge under subsection (d)(1) of section 37.09, "the State must allege and prove another offense was in fact committed."

The United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure each require that a charging instrument provide an accused with adequate notice. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West, Westlaw through 2017 1st C.S.); *Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000), *overruled in part on other grounds by Gollihar v. State*,

---

[12] Stahmann was indicted on four offenses—two counts of aggravated assault with a deadly weapon (Counts I and II), one count of intoxication assault (Count III), and one count of tampering with physical evidence (Count IV). The first three counts were dismissed prior to the close of evidence.

20

46 S.W.3d 243 (Tex. Crim. App. 2001). To constitute adequate notice, the instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *see* TEX. CODE CRIM. PROC. ANN. art. 21.11 (West, Westlaw through 2017 1st C.S.) ("An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged . . . ."). We review a trial court's ruling on a motion to quash an indictment de novo. *Moff*, 154 S.W.3d at 601.

Usually, an indictment tracking the language of the statute, as here, will satisfy constitutional and statutory requirements. *State v. Barbernell*, 257 S.W.3d 248, 251 (Tex. Crim. App. 2008); *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998). However, an indictment tracking the statute may be insufficient when the statutory language is not completely descriptive. *Barbernell*, 257 S.W.3d at 251 (citing *Curry*, 30 S.W.3d at 398). The statutory language is not completely descriptive "when the statutes define a term in such a way as to create several means of committing an offense, and the definition specifically concerns an act or omission on the part of the defendant." *Id.* (citing *Solis v. State*, 787 S.W.2d 388, 390 (Tex. Crim. App. 1990); *Geter v. State*, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989)). In such cases, more particularity is required to provide notice. *Id.* (noting that "if the prohibited conduct is statutorily defined to include more than one manner or means of commission, the State must, upon timely request, allege the particular manner or means it seeks to establish").

21

Stahmann claims that a tampering charge under penal code section 37.09(d)(1) is analogous to a burglary charge under penal code section 30.02(a)(3), an indictment for which must name the specific felony offense that was committed or attempted. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West, Westlaw through 2017 1st C.S.) (stating that a person commits an offense if he or she "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault"); *Davila v. State*, 547 S.W.2d 606, 609 (Tex. Crim. App. 1977) (holding that an indictment under section 30.02(a)(3) "may allege that the accused committed theft or a *named* felony; or attempted to commit theft or a *named* felony; or it may allege each of the essential elements of theft or the felony in question" (emphasis added)).

We disagree. Arguably, both tampering under section 37.09(d)(1) and burglary under section 30.02(a)(3) define terms in "such a way as to create several means of committing an offense." *See Barbernell*, 257 S.W.3d at 251. But the term at issue in section 30.02(a)(3)—"felony, theft, or an assault"—"specifically concerns an act or omission on the part of the defendant." *See id.* (citing *Solis*, 787 S.W.2d at 390; *Geter*, 779 S.W.2d at 405). That is because, to convict under that statute, the State must prove that the defendant was the one who committed or attempted to commit one of those acts. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). On the other hand, the term "offense" as used in section 37.09(d)(1) does not "specifically concern[] an act or omission on the part of the defendant." *See Barbernell*, 257 S.W.3d at 251 (citing *Solis*, 787 S.W.2d at 390; *Geter*, 779 S.W.2d at 405). That is because, while section 37.09(d)(1) requires a showing that the defendant have knowledge that an "offense" occurred, it does not require that the "offense" be committed by the defendant. *See* TEX. PENAL CODE ANN. § 37.09(d)(1); *cf.*

22

*id.* § 30.02(a)(3). Therefore, under the principle elucidated in *Barbernell* and its predecessors, the indictment did not need to identify the specific "offense" that was committed. *See* 257 S.W.3d at 251; *see also Ramirez v. State*, No. 11-11-00077-CR, 2013 WL 600270, at *3 (Tex. App.—Eastland Feb. 17, 2013, pet. ref'd) (mem. op., not designated for publication) (noting that "[t]he plain language of [subsection 37.09(d)(1)] does not require the State to establish another offense" and that, "had the legislature intended to require proof of an underlying offense as an element of tampering with physical evidence, it could easily have specified such a requirement").

Stahmann additionally contends that, even if the term "offense" in section 37.09(d)(1) does not "specifically concern[] an act or omission on the part of the defendant," the indictment must still name the specific offense committed. He argues generally that "when a criminal statute requires the act be done with a culpable mental state directed at some other offense, that offense must be specifically named." Stahmann cites *Ex parte Donohue*, 602 S.W.2d 265, 266 (Tex. Crim. App. 1980), *Denison v. State*, 651 S.W.2d 754, 758–59 (Tex. Crim. App. 1983), *Cotton v. State*, 645 S.W.2d 907, 908 (Tex. App.—Fort Worth 1983, no pet.), and *Bollman v. State*, 629 S.W.2d 54, 55 (Tex. Crim. App. 1982) for the proposition that an indictment for burglary "with intent to commit a felony" and an indictment for kidnapping "with intent to facilitate the commission of a felony" "must at least name the offense intended." Those cases do not support his argument. *Donohue* involved a burglary charge under section 30.02(a)(3), which we have already held is distinguishable. *See* 602 S.W.2d at 266. *Denison* and *Cotton* involved burglary charges under section 30.02(a)(2), which requires a showing of "intent to commit a felony," but the indictments in those cases did name the alleged intended felony; the

23

issue was whether they needed to contain additional detail, and the courts concluded that they did not. *See Denison*, 651 S.W.2d at 759; *Cotton*, 645 S.W.2d at 908. Similarly, *Bollman* involved a charge of kidnapping under section 20.04(a)(3), which requires a showing that the defendant intended to facilitate the commission of a felony, but the indictment in the case named the alleged felony committed; the issue was whether the indictment needed to allege all of the elements of that felony, and the court held that it did not. *See* 629 S.W.2d at 55.

In any event, "[a]n indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 21.19 (West, Westlaw through 2017 1st C.S.). Stahmann has not established that his substantial rights were prejudiced by the failure of the indictment to name the specific "offense" which he was alleged to have knowledge of under section 37.09(d)(1). In particular, the original indictment included detailed charges of aggravated assault with a deadly weapon and intoxication assault, both arising out of the same accident.[13] *See Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003) (noting that the constitutional requirement of sufficient notice "may be satisfied by means other than the language in

---

[13] Paragraph I of Count I of the indictment alleged that Stahmann intentionally, knowingly, or recklessly caused Gonzalez to break his wrist or finger "by failing to maintain a proper lookout, by failing to yield the right of way, by failing to maintain proper control of his vehicle, or by turning [his] vehicle . . . in front of" Gonzalez's vehicle, while using or exhibiting "a deadly weapon, to-wit: a motor vehicle . . . ." *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West, Westlaw through 2017 1st C.S.) (defining offense of aggravated assault with a deadly weapon). Paragraph II of Count I alleged that Stahmann intentionally, knowingly, or recklessly caused Gonzalez to suffer "the protracted loss or impairment of the function of the right arm, wrist, or finger" by the same acts. *See id.* Count II alleged that Stahmann intentionally, knowingly, or recklessly caused Gonzalez's wife to suffer "pain or abrasions to the face or chest" by the same acts. *See id.* Count III alleged that Stahmann, "by accident or mistake, while operating a motor vehicle in a public place while intoxicated, by reason of that intoxication" caused Gonzalez to suffer "the protracted loss or impairment of the function of the right arm, wrist, or finger." *See id.* § 49.07 (West, Westlaw through 2017 1st C.S.) (defining offense of intoxication assault).

24

the charging instrument").  Therefore, Stahmann had actual notice of the "offense[s]" of which the State alleged he had knowledge.  *See id.* ("When a motion to quash is overruled, a defendant suffers no harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend.").

For the foregoing reasons, the trial court did not err in denying Stahmann's motion to quash the second paragraph of Count IV of the indictment.  We overrule his fourth issue.

## C.    Jury Charge Error

By his fifth and sixth issues, Stahmann contends the trial court erred by denying his request to include instructions in the jury charge:  (1) specifying which "offense(s)" he was alleged to have knowledge of under subsection 37.09(d)(1); and (2) stating that the jury must be unanimous as to the specific "offense[s]" in order to convict.

Texas law requires that a jury reach a unanimous verdict about "the specific crime that the defendant committed."  *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (citing *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008)).  This means that the jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged."  *Id.* (citing *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)).  But although "the jury must unanimously agree about the occurrence of a single criminal offense, they need not be unanimous about the specific manner and means of how that offense was committed."  *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011).

In *Cosio v. State*, the Texas Court of Criminal Appeals described three situations where non-unanimity issues may arise in the context of a criminal conviction:  (1) "when

25

the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results of the conduct differed"; (2) "when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions"; and (3) "when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute." *Cosio*, 353 S.W.3d at 771–72. The evidence at Stahmann's trial established only one "single and discrete" criminal act—that is, throwing the pill bottle over the fence. There was no suggestion, nor was there any evidence, of repeated instances of the same criminal conduct, whether the results were the same or different, or of an offense committed under a different provision of the statute at a different time. *See id.* Therefore, none of the situations described in *Cosio* are present here.

We have already concluded that, for notice purposes, the indictment was not required to specify the "offense" which Stahmann was alleged to have knowledge of under subsection 37.09(d)(1). We further conclude that the precise identity of that "offense" is a "preliminary factual issue" for which jury unanimity is not required. *See Kitchens*, 823 S.W.2d at 258 (providing that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict"); *Smith v. State*, 500 S.W.3d 685, 701 (Tex. App.—Austin 2016, no pet.) (concluding, in a prosecution for organized criminal activity, that the trial court did not err in refusing a charge instruction requiring unanimity as to "the overt acts performed" or "the members of the combination"). Therefore, the trial court did not err by denying the requested instructions.

Stahmann's fifth and sixth issues are overruled.

26

**D. Collateral Estoppel**

Stahmann raises several issues concerning the effect of certain findings made in a separate criminal proceeding in which he was found guilty of credit card or debit card abuse. *See* TEX. PENAL CODE ANN. § 32.31 (West, Westlaw through 2017 1st C.S.).

The record reflects that Stahmann pleaded guilty to two counts of credit card or debit card abuse in the 274th District Court of Comal County on May 9, 2011. He was initially placed on five years' deferred-adjudication community supervision, but the State moved for adjudication of guilt in 2014. The State alleged in its motion to adjudicate that Stahmann violated the terms of his community supervision in sixteen different ways—four of which correspond precisely to the four charges brought in the instant case. The 274th District Court found three of the allegations not true, and it found the remaining allegations true. The court therefore adjudicated Stahmann guilty of credit card or debit card abuse and sentenced him to two years' confinement and a fine of $1,000.

One of the allegations which the 274th District Court found not true was that Stahmann committed intoxication assault against Gonzalez on July 1, 2012. At the adjudication hearing on December 1, 2014,[14] the court remarked as follows at the close of the evidence:

> Here's the problem you've got—not you [defense counsel] in particular, mostly the State: You can't prove any of this. You can't prove that he was intoxicated at the time of the offense, you can't prove he was inhibited by drugs or alcohol. You can prove that he threw the pills over the fence while an investigation was going on. I can find that true. But all the things you want to prove, you simply haven't been able to prove. I mean, I can sit here and listen to you for the rest of the day, but you're not going to get there from here.

---

[14] A copy of the State's motion to adjudicate and a transcript of the hearing thereon were entered into evidence at a pre-trial hearing in the instant case.

27

. . . .

> The accident that occurred, I don't believe—it's nonsense about the fault of the window.[15]  You can blow that off.  I'm not going to pay any attention to that.  He had an accident.  Now, was it caused by any form of intoxication?  There's no evidence of that, other than him throwing a bottle of pills away.

The trial court made this statement in spite of the fact that there was evidence of open beer cans in Stahmann's van, as well as evidence that an analysis of Stahmann's blood indicated the presence of alcohol and narcotics.  *See Stahmann*, 2016 WL 3974567, at *1.  Stahmann's seventh through twelfth issues in this appeal contend that the trial court erred by making several rulings in light of this finding.

### 1. Standard of Review and Applicable Law

The Double Jeopardy Clause, contained within the Fifth Amendment to the United States Constitution and applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense for which he has been previously acquitted or previously convicted.  U.S. CONST. amends. V, XIV; *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008) (citing *Brown v. Ohio*, 432 U.S. 161, 164 (1977)).  The doctrine of collateral estoppel, which is embodied within the Double Jeopardy Clause, provides "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit relating to the same event or situation."  *Murphy v. State*, 239 S.W.3d 791, 794 (Tex. Crim. App. 2007) (citing *Ashe v. Swenson*, 397 U.S. 436, 445 (1970)).

---

[15] The 274th District Court is referring here to testimony at the adjudication hearing that Stahmann's "window" was "fogged up" at the time of the accident.

To decide whether collateral estoppel bars a subsequent prosecution, a court must determine (1) exactly what facts were necessarily decided in the first proceeding, and (2) whether those "necessarily decided" facts constitute essential elements of the offense in the second trial. *Id.* at 795. "In each case, courts must review the entire trial record to determine—'with realism and rationality'—precisely what fact or combination of facts the jury necessarily decided and which will then bar their relitigation in a second criminal trial." *Ex parte Taylor*, 101 S.W.3d 434, 441 (Tex. Crim. App. 2002) (quoting *Ashe*, 397 U.S. at 444). The defendant must meet the burden of proving that the facts in issue were necessarily decided in the prior proceeding. *Murphy*, 239 S.W.3d at 795.

In *Ex parte Tarver*, the Texas Court of Criminal Appeals held that, where the trial court makes a specific finding of fact that an allegation made in a motion to revoke probation is "not true," the State is barred by collateral estoppel from relitigating that fact. 725 S.W.2d 195, 200 (Tex. Crim. App. 1986).

A decision to apply or not to apply collateral estoppel is a question of law applied to facts, for which de novo review is appropriate. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Ex parte Bolivar*, 386 S.W.3d 338, 344 (Tex. App.—Corpus Christi 2012, no pet.).

### 2. Analysis

By his seventh issue, Stahmann argues that the trial court erred by denying his request for a limiting instruction after Koepp, the deputy sheriff who responded to the scene of the accident, testified at trial that in a case like this, he would typically investigate if the driver was under the influence of alcohol or drugs. By his eighth issue, he argues that the trial court erred in denying his request for a limiting instruction "on intoxication."

29

By his ninth and tenth issues, he contends the trial court erred by denying his requests for instructions in the jury charge that the "offense" which he allegedly knew was committed under penal code subsection 37.09(d)(1) "cannot be related to intoxication." By his eleventh and twelfth issues, he contends that his convictions violated the United States and Texas Constitutions on grounds of double jeopardy, collateral estoppel, and issue preclusion. These issues each stem from Stahmann's contention that, due to the 274th District Court's ruling in the credit card or debit card abuse case, collateral estoppel bars relitigation of the issue of whether he was intoxicated at the time of the accident.

We disagree with that contention. In the credit card or debit card abuse proceeding, the allegation determined to be "not true" was that Stahmann had committed intoxication assault against Gonzalez on July 1, 2012. One of the elements of this offense is that the person was intoxicated, but that is not the only element. *See* TEX. PENAL CODE ANN. § 49.07(a)(1) (West, Westlaw through 2017 1st C.S.) ("A person commits an offense if the person, by accident or mistake . . . while operating a motor vehicle in a public place while intoxicated, by reason of that intoxication causes serious bodily injury to another . . . ."). Therefore, a "not true" finding on an intoxication assault allegation does not necessary imply a finding that the person was not intoxicated. And though the 274th District Court made remarks indicating that it did not believe Stahmann was intoxicated, the court explicitly refused to make formal findings of fact on the issue.

Even assuming that 274th District Court "necessarily decided" that Stahmann was not intoxicated, that is not an element of tampering with physical evidence, which was the only offense charged to the jury in this case. *See Murphy*, 239 S.W.3d at 794; *Taylor*, 101 S.W.3d at 441; *see also* TEX. PENAL CODE ANN. § 37.09(a)(1), (d)(1). Knowledge that

an "offense" was committed is an element under penal code subsection 37.09(d)(1), but the jury could have found this element from the evidence without finding that Stahmann was intoxicated. For example, the evidence amply supported a finding that Stahmann knew that a traffic violation had been committed, or that the offense of possessing a dangerous drug without a prescription had been committed. *See* TEX. HEALTH & SAFETY CODE ANN. § 483.041(a) (West, Westlaw through 2017 1st C.S.) ("A person commits an offense if the person possesses a dangerous drug unless the person obtains the drug from a pharmacist . . . or a practitioner . . . ."); TEX. TRANSP. CODE ANN. § 542.301(a) (West, Westlaw through 2017 1st C.S.) (providing that a person commits an offense if the person performs an act prohibited or fails to perform an act required by Subtitle C, Title 7 of the Texas Transportation Code); *id.* § 545.152 (West, Westlaw through 2017 1st C.S.) ("To turn left at an intersection or into an alley or private road or driveway, an operator shall yield the right-of-way to a vehicle that is approaching from the opposite direction and that is in the intersection or in such proximity to the intersection as to be an immediate hazard.").

In any event, Stahmann does not contend that any of the trial court's rulings which he complains about had any effect on the jury's consideration of the allegations under penal code subsection 37.09(a)(1), which does not require a showing of knowledge of an "offense." Because, as we have already held, the evidence was sufficient to support conviction under that subsection, Stahmann cannot show that he was harmed by the failure of the trial court to instruct the jury in accordance with his requests. *See* TEX. R. APP. P. 44.2; *Kitchens*, 823 S.W.2d at 258 ("It is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to

31

return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted."); *Anderson*, 717 S.W.2d at 631.

Stahmann's seventh through twelfth issues are overruled.

## E.    Improper Argument

By his final five issues, Stahmann contends that the trial court erred by overruling his objections to various remarks made by the prosecutor during closing argument at the guilt-innocence phase of trial.

### 1.    Applicable Law and Standard of Review

Permissible jury argument falls into four distinct and limited categories:  (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) plea for law enforcement.  *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).  Even if an argument is improper, it will not constitute grounds for reversal unless the statements to the jury injected new and harmful facts to the case, or were so extreme and manifestly improper that they deprived appellant of a fair and impartial trial.  *Id.* at 573 n.3.  We examine alleged improper argument in light of the facts adduced at trial and in the context of the entire argument.  *McGee v. State*, 114 S.W.2d 229, 239 (Tex. Crim. App. 1989).

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion.  *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).  We also review a trial court's denial of a mistrial for abuse of discretion.  *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011).  In determining whether the trial court abused its discretion in denying a mistrial, we consider (1) the severity of the misconduct,

(2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Id.*

"Before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc); *see* TEX. R. APP. P. 33.1; *Archie*, 221 S.W.3d at 699.

### 2. Remarks Outside The Record

The first allegedly improper remark, challenged in Stahmann's thirteenth issue, is as follows:

| [Prosecutor]: | . . . I told you-all from the very beginning this was a simple case, just a simple case of tampering. But as you've seen through the trial, it turned into something a little bit different. And that's why I always talk about the roles of advocates. |
|---|---|
| [Defense counsel]: | Excuse me, Judge. I object to this. This is not part of the evidence. |
| [Prosecutor]: | Argument. |
| THE COURT: | Overruled. Overruled. It's argument. |

By his fourteenth issue, Stahmann complains of the following remark made immediately thereafter:

| [Prosecutor]: | That's why I talked to you [during jury selection] about the OJ trial. |
|---|---|
| [Defense counsel]: | Excuse me, Judge. |
| [Prosecutor]: | That's why I talked to you— |
| [Defense counsel]: | I object to him talking about trials that are not part of this case. |
| [Prosecutor]: | Argument, Your Honor. |

33

THE COURT:      Let's refrain from referring to other cases that have nothing to do with this particular case.

Stahmann contends that the trial court erred by denying his objections to these remarks because they were "impermissibly outside the evidence and record."

We disagree. As to both remarks, the prosecutor was referring back to earlier comments he had made during jury selection—which were not objected to—regarding the role of a defense attorney to zealously represent his client. The comments did not inject new or harmful facts to the case, nor were they so extreme or improper as to deprive Stahmann of a fair and impartial trial. *See Brown*, 270 S.W.3d at 573 n.3. Additionally, as to the second complained-of remark, the trial court did not explicitly rule on counsel's objection, and to the extent it did rule, it did not do so adversely to Stahmann. *See* TEX. R. APP. P. 33.1; *Cockrell*, 933 S.W.2d at 89. We overrule Stahmann's thirteenth and fourteenth issues.

### 3. Striking Over Shoulders of Counsel

By his fifteenth and sixteenth issues, Stahmann complains of the following remarks:

[Prosecutor]:      When you look at the roles of advocates and how the evidence is presented to you, that's how you get off on tangents like the white powder. That's how you get off on the other tangents that we've gone down about pictures being taken. That's how you get off into things like that. That's how—it's presented to you in a way that's not necessarily the truth.

[Defense counsel]:      Excuse me, Judge. I object to that as striking at Karl over the shoulder of counsel to indicate that we have done anything that was not truthful.

THE COURT:      Overruled.

This is argument, ladies and gentlemen.

> You will recall the evidence as you see fit. You are the sole judges of the evidence and the weight and credibility of the evidence as well as the testimony.
>
> And, once again, as I've told you many times, the statements by the attorneys are not evidence.
>
> Let's proceed.

[Prosecutor]: Started off with the hypotheticals in jury selection that defense counsel gave you. He told you that if a person illegally obtained pills and then flushed them down the toilet, that's not tampering.

But you've seen the law. That's not true.

You were also told about another hypothetical where, if a person committed a bank robbery and hid the money in the mattress, that's not tampering.

You've seen the law. That's not true.

[Defense counsel]: Excuse me, Judge. I object to that. That's a misstatement—

At that point, a conference was held at the bench during which the trial court did not explicitly sustain defense counsel's objection but instructed both attorneys to "refrain from throwing in statements of some type of actions that are not in this case." Defense counsel requested and obtained a running objection to the prosecutor "saying anything to indicate that I've done anything improper or untruthful or whatever" because it is striking at his client over the shoulders of counsel.

Argument that attacks the defense attorney—that is, strikes at a defendant over the shoulders of counsel—is improper. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (en banc) (holding that "a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character"). However,

35

courts distinguish between improper remarks directed at defense counsel himself and remarks which attack or disparage counsel's argument or theory of defense. *See Coble v. State*, 871 S.W.2d 192, 203–05 (Tex. Crim. App. 1993) (en banc) (approving the prosecutor's argument concerning a saying among lawyers that if you have neither the facts or the law on your side, "you argue something ridiculous"); *Gorman v. State*, 480 S.W.2d 188, 190 (Tex. Crim. App. 1972) (explaining that the prosecutor's comment "[d]on't let him smoke-screen you, he has smoke-screened you enough" was in response to defense counsel's argument attempting to minimize the defendant's prior criminal record); *Cueva v. State*, 339 S.W.3d 839, 882–83 (Tex. App.—Corpus Christi 2011, pet. ref'd) (finding that the prosecutor's argument that "a standard tactic of defense attorneys, when your victim has done something indefensible, [is to] put the victim on trial" was not improper because it "attacked the defense tactic and not the defense attorney himself"). The latter type of remark is permissible. *See Brown*, 270 S.W.3d at 570.

We conclude that the remarks at issue were not improper. From our examination of the record, it is apparent that the prosecutor was attempting to rebut arguments previously raised by defense counsel that police had not tested the "white powder" contained in the pill bottle and had not taken photographs of the pill bottle. By claiming that such concerns were "presented to [the jury] in a way that's not necessarily the truth," the prosecutor was disputing defense counsel's theory of the case; he was not impugning counsel's character. Stahmann's fifteenth and sixteenth issues are overruled.

### 4. "Rabbit Trail"

By his seventeenth issue, Stahmann objects to the following remarks:

[Prosecutor]: So let's start off, from the beginning, what they want you to believe. They want you to believe that he was

36

in shock and that he—this was some sort of act done because he didn't know it was going on.

But you heard from a trained, 24-year veteran EMT that he was alert and oriented times four. He knew the answers to four critical questions.

He might have been in shock. He might have had a head wound to his head, but he knew exactly what was going on.

You heard from Mr. Ballard, who spoke with him. Mr. Ballard told you-all he knew exactly what was going on.

So the inference that he had some sort of concussion, he was in shock, is just not there in the evidence. But, once again, it's going down a rabbit trail that they want you to look at instead of focusing on the facts of the case.

[Defense counsel]: Excuse me, Judge, just one more time.

The rabbit—I object to the rabbit trail inference. There's a specific case called Mosley vs. State that says that is improper argument. I object to that.

The trial court sustained defense counsel's objection to this argument and instructed the jury to disregard it, but the court overruled counsel's motion for mistrial. On appeal, Stahmann argues that these arguments impermissibly struck at him over the shoulders of counsel and that a mistrial was warranted.

Again, we disagree. A mistrial is an appropriate remedy only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.*

37

Contrary to defense counsel's representation at trial, the *Mosley* Court did not conclude that references to a "rabbit trail" were necessarily improper; rather, it assumed so for purposes of its analysis. *See* 983 S.W.2d at 259. Even making that same assumption ourselves, we find that the trial court did not abuse its discretion in denying a mistrial. The "rabbit trail" remark was not so prejudicial as to render further proceedings futile. *See Ocon*, 284 S.W.3d at 884. We overrule Stahmann's seventeenth issue.

### III. CONCLUSION

The trial court's judgment convicting Stahmann of tampering with physical evidence is reversed. We remand the cause to the trial court with instructions to reform the judgment to reflect a conviction for the offense of attempted tampering with physical evidence, a state-jail felony, *see* TEX. PENAL CODE ANN. §§ 15.01, 37.09, and for further proceedings, including a new punishment hearing, consistent with this opinion. *See Thornton*, 425 S.W.3d at 307.

DORI CONTRERAS
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
4th day of January, 2018.