

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ALEX CENICEROS, | § | No. 08-22-00156-CR |
| Appellant, | § | Appeal from the |
| v. | § | 171st Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20170D03795) |

**MEMORANDUM OPINION**

A jury convicted Appellant Alex Ceniceros of manslaughter, accident involving death, and tampering with physical evidence. Appellant challenges his convictions in three issues. He argues that he received ineffective assistance of counsel due to defense counsel's failure to (1) file a motion to suppress evidence and (2) object to the State's improper jury arguments. Appellant also contends that the evidence is legally insufficient to support his conviction for tampering with physical evidence. For the following reasons, we affirm Appellant's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background

#### (1) The collision

During the early morning hours of November 22, 2015, Lieutenant Robert Pisarcik of the El Paso Police Department (EPPD) was assisting other officers with an unrelated investigation at

Del Sol Hospital in El Paso, Texas. While Pisarcik was at the hospital, a hospital employee informed him that he had just heard a "very loud collision" on Gateway East, a nearby road running parallel to Interstate 10. Seeking to investigate the collision, Pisarcik left in his patrol vehicle and started driving south on Sumac Drive. When he arrived at the intersection of Sumac Drive and Gateway East, Pisarcik observed several vehicles stopped in the intersection, including a 1993 beige Ford Escort facing opposite the direction of travel at the corner of the intersection. Upon exiting his vehicle, people at the scene yelled at Pisarcik that an unresponsive person was still inside the Escort. Pisarcik walked over to the Escort, which had severe rear-end damage, and he saw a man slumped over in the driver's seat. Pisarcik tried to reach in to get the man's pulse but could not reach the man or get the door open. Pisarcik went to the passenger-side door and broke the window to reach in to take the man's pulse, which was very faint and then almost immediately stopped. Firefighters arrived and pronounced the man, later identified as Albert Guzman, dead at the scene.[1]

After Pisarcik learned that a full-size pickup truck had been seen traveling east away from the scene on Gateway East and observing debris in the road that was consistent with coming from a dark-colored Dodge Ram pickup truck, Pisarcik put out a BOLO (i.e., be-on-the-lookout) for that type of vehicle. Nobody at the scene identified the driver of the truck or the truck's license plate number.

**(2) Investigation of the collision**

Officer Raul Gallegos of EPPD's Special Traffic Investigations Unit was dispatched to the scene to investigate the collision. Because the Escort had impacted a traffic pole after it was struck,

---

[1] A subsequent autopsy showed that Guzman died of blunt injuries to his head and torso, and the medical examiner listed his manner of death as an accident. According to the medical examiner, Guzman's injuries were consistent with being involved in a motor-vehicle accident.

Gallegos was unable to perform an accident reconstruction. But due to the nature of the damage the Escort suffered, Gallegos opined that the Escort had been stopped at the intersection and was struck from behind by another vehicle traveling at a high speed. Gallegos observed that the Escort's rear taillight was missing. While at the scene, Gallegos collected a Dodge emblem and a black piece of a grille that contained a serial number consistent with coming from a 2002 or 2003 Dodge Ram pickup truck.[2] With this information, Gallegos updated the BOLO to reflect a 2002 or 2003 Dodge Ram, and EPPD issued a public service announcement about the truck via Crime Stoppers. Gallegos and other officers began running through vehicle registrations in that area of El Paso for possible owners of 2002 or 2003 Dodge Ram trucks.

Jesus Urquiza, Appellant's neighbor since 2014, testified that Appellant kept a black Volkswagen Jetta, a black and silver Dodge Ram truck, and a small car in his driveway. Urquiza recalled that Appellant got the smaller car "after the crash," and Urquiza never saw anybody other than Appellant driving the Dodge Ram. At some point, Urquiza noticed the truck was no longer present in Appellant's driveway. Around the same time, Urquiza heard the Crime Stoppers announcement about the truck and called in to report the absence of Appellant's truck "just in case" it was the vehicle police were searching for.

After Urquiza made the report, Gallegos and other officers began researching Urquiza's tip and discovered that Appellant owned the house that formerly had a Dodge Ram parked outside. The officers also discovered through a title search that Appellant had a 2002 Dodge Ram registered to him under a different residence; the officers searched but did not find the truck there. After

---

[2] Jose Mena, the lead mechanic at a local car dealership at the time in question, testified that officers approached him for his assistance in identifying debris collected from the scene. Mena told the officers that the pieces of debris came from the front grille of a 2002 or 2003 Dodge Ram pickup truck. Mena also testified that other various pieces recovered from the front of Appellant's truck came from a Ford Escort manufactured between 1992 and 1996.

3

Urquiza provided the officers the license plate information from Appellant's Jetta, the officers determined that the Jetta had previously been involved in a traffic violation and was associated with yet another residence on the outskirts of El Paso County. Since the residence was outside of EPPD's territorial jurisdiction, Gallegos and the other officers acquired the El Paso County Sheriff's Department assistance to search for the truck there.

As they were driving up to the residence, the officers observed a Dodge Ram parked in the front driveway. Gallegos stated "it looked like [it] had damage to [its] front end as soon as we were pulling up." The officers made contact with the owner of the residence, Appellant's father, who gave the officers permission to inspect the truck. The officers saw that the front part of the truck had extensive damage, and they discovered parts of another vehicle stuck in the truck's grille, including beige-colored car parts and a taillight later determined to be from a Ford Escort. The officers did not make contact with Appellant at the residence. After researching local collision reports, the officers discovered that Appellant had not recently reported any crashes in El Paso County.

The officers took the Dodge Ram into custody. Upon searching the truck, they found Appellant's fingerprints on several items in the truck. While searching the truck's interior, the officers also found the truck's Texas license plates with the number "60W-CB2," matching the truck's registration. However, the truck had a different-style Texas license plate with the number "GMH-6540" on the rear bumper when officers located and subsequently inspected the truck.

**(3) Appellant's communications regarding the collision**

Gallegos and the other officers subsequently acquired a search warrant for records from Appellant's Facebook account. In a deleted December 1, 2015 conversation with his former girlfriend, Diana Peña, Appellant said he "do[es not] drink anymore" because he "felt it was time.

4

I promised my kids. I crashed my truck into a pole. Well a sign[.]" Peña asked if Appellant was drunk at the time, and he responded, "Not completely." Peña asked what had happened, and Appellant replied in Spanish, "Se me cruso un sign" (i.e., "The sign crossed in front of me."). At trial, Peña testified that after she had this conversation with Appellant, she deleted several subsequent conversations with Appellant per his request. Peña also recalled asking Appellant what happened with his truck, and Appellant responded, "The less you know the better" and that "it was under investigation, that it was a mistake."

In a deleted November 21, 2015 conversation (the night of the collision),[3] Appellant told a friend, Gerardo Villa, that he was "[g]oing to watch the fight," and Appellant sent an advertisement for a pay-per-view boxing match scheduled for that night. In another series of deleted Facebook messages from December 4, 2015, Appellant's brother, Gus Rivas, sent Appellant an internet link to a news story stating that "El Paso police are searching for a pickup truck believed to have been involved in a deadly hit and run crash early Sunday morning. The crash happened just before 2 a.m. at Gateway East and Corral."

**B. Procedural history**

The State of Texas charged Appellant with one count of manslaughter (Count I), one count of accident involving death (Count II), and one count of tampering with physical evidence (Count III). At trial, Appellant presented testimony from Ruben Estrella, a body shop employee who had painted Appellant's truck after Appellant told Estrella "he had wrecked it and then from there he went home." Estrella testified that upon examining pieces of debris from the truck, there were differences in the paint finish between the grille parts collected from the crash scene and the portion

---

[3] Although the records state the conversation took place on November 22, the records show UTC time that is six hours ahead of Mountain Standard Time.

5

of the grille that was still attached to the truck. The jury found Appellant guilty of all counts and assessed punishment of twenty years' imprisonment on Counts I and II and ten years' imprisonment on Count III. Appellant filed a motion for new trial that was overruled by operation of law. This appeal followed.

Appellant challenges his convictions in three issues. He contends that he is entitled to a new trial because his trial counsel was ineffective for failing to (1) file a motion to suppress the evidence obtained through a warrantless search and seizure of his truck and (2) object to the prosecutor's jury argument that Appellant should have been prosecuted for the offense of intoxication manslaughter. Appellant also argues that the evidence is legally insufficient to support his conviction for tampering with physical evidence. We address the legal sufficiency issue first.

## II. LEGAL SUFFICIENCY

In his third issue, Appellant argues the evidence is legally insufficient to support his conviction for tampering with physical evidence because (1) Appellant did not know that an investigation was pending when he concealed the truck at his father's house, and (2) he did not "conceal" his truck from law enforcement as that term pertains to the charged offense.

### A. Standard of review and applicable law

The Fourteenth Amendment's due-process guarantee requires that legally sufficient evidence support every conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In a legal-sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit any rational jury to find the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 912 (establishing legal sufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

Applying that standard, we recognize the jury as the sole arbiter of witness credibility and the weight attached to witness testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Only the jury acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319). In doing so, the jury may choose to believe or disbelieve any testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *Dobbs*, 434 S.W.3d at 170 (citing *Jackson*, 443 U.S. at 319). In conducting a legal-sufficiency review, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. Crim. App. 1988). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 318). "Circumstantial evidence and direct evidence are equally probative, and either one alone can be sufficient to establish guilt." *Ratliff v. State*, 663 S.W.3d 106, 113 (Tex. Crim. App. 2022).

Here, Appellant challenges his conviction for tampering with physical evidence. As it pertains to this case, a person commits that offense "if, knowing that an investigation or official proceeding is pending or in progress, he . . . conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official

7

proceeding[.]"[4] *See* TEX. PENAL CODE ANN. § 37.09(a)(1). Appellant challenges two elements of the offense, contending that the State failed to prove that he (1) knew that an investigation was pending or in progress and (2) concealed his truck. We consider each element in turn.

**B. Legally sufficient evidence established Appellant knew an investigation was pending**

Appellant first argues that the State failed to establish Appellant's knowledge of a pending investigation. *See id.* Within the context of the tampering-with-physical-evidence offense, courts have interpreted "pending" to mean "impending, or about to take place." *See Nguyen v. State*, No. 11-21-00095-CR, 2022 WL 17997087, at *3 (Tex. App.—Eastland Dec. 30, 2022, no pet.) (mem. op., not designated for publication) (citing *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd), and *Ochoa v. State*, No. 07-18-00045-CR, 2019 WL 1870108, at *4 (Tex. App.—Amarillo Apr. 25, 2019, no pet.) (mem. op., not designated for publication)); *Stahmann v. State*, 548 S.W.3d 46, 58 (Tex. App.—Corpus Christi–Edinburg 2018), *aff'd*, 602 S.W.3d 537 (Tex. Crim. App. 2020) (recognizing that a jury could have reasonably inferred that a defendant who had just been involved in a high-speed collision "knew that a police investigation into the accident was about to take place" and that an investigation was pending when he attempted to conceal a pill bottle).

Appellant contends that there was insufficient evidence to establish he was aware of a law-enforcement investigation when he allegedly concealed the truck at his father's house. We disagree. Proof of a defendant's intent or knowledge can generally be inferred from his acts, words, or conduct. *Stahmann*, 548 S.W.3d at 59 (citing *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004)). The messages Appellant sent from his Facebook account on December 2, 2015—

---

[4] Because the State charged Appellant solely under a concealment theory, we do not consider whether Appellant altered or destroyed the truck. *See* TEX. PENAL CODE ANN. § 37.09(a)(1).

approximately ten days after the collision—showed he was aware that he had been involved in a collision on the night in question. That same day, Appellant also received a Facebook message from his brother with an internet link to a news story associated with EPPD's investigation of the collision. Moreover, Appellant's instructions to Peña to delete the Facebook messages she received from him (and the fact that the messages had in fact been deleted from Appellant's Facebook account) constitute circumstantial evidence of his consciousness of guilt and knowledge that law enforcement could discover the messages in an investigation of the crash. Finally, the evidence suggesting that Appellant moved the truck to a location on the outskirts of El Paso County is additional circumstantial evidence of his knowledge that officers could have found the truck at his house through an investigation.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that Appellant knew an investigation was pending when he concealed the truck at his father's house. *See Nguyen*, 2022 WL 17997087, at *3 ("It is reasonable for a jury to infer that a defendant is aware of a pending investigation based on an offense that they themselves have committed or in which they were directly involved.") (citations omitted); *Stahmann*, 548 S.W.3d at 58 (jury could have rationally inferred that the defendant, who had just been involved in a vehicular collision, knew that a law-enforcement investigation of the collision was "about to take place" (i.e., pending) when he attempted to conceal a pill bottle).

## C. Legally sufficient evidence established Appellant concealed the truck

Next, Appellant argues that the evidence is legally insufficient to prove that he actually concealed the truck. He posits that the State failed to prove he concealed his truck because it was "readily visible from the street . . . [and c]hildren often park their vehicles at their parents' house," plus there was no evidence showing why the truck was at Appellant's father's house.

9

To prove concealment under Section 37.09(a)(1), the State must prove "that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation." *Stahmann v. State*, 602 S.W.3d 573, 581 (Tex. Crim. App. 2020) (citation and internal quotation marks omitted). Appellant relies on *Stahmann v. State* to argue that the State did not prove he actually concealed the truck. In that case, the defendant was involved in a motor-vehicle collision and subsequently threw a pill bottle over a fence. *Id.* at 576. The pill bottle landed in the plain view of two witnesses who directed officers to it. *Id.* Recognizing that intent and concealment are distinct elements of the tampering-with-physical-evidence offense, the Court of Criminal Appeals held that although the evidence was legally sufficient to show that the defendant intended to conceal the pill bottle by throwing it over the fence, the evidence was insufficient to establish actual concealment because the pill bottle landed in plain view atop some grass. *Id.* The court did not disturb the court of appeals's judgment remanding the case to the trial court to enter a reformed judgment reflecting a conviction for attempted tampering with physical evidence. *Id.* at 581; *see Stahmann*, 548 S.W.3d at 61.

This case is distinguishable from *Stahmann.* Here, Appellant drove his truck away from the collision scene after crashing into Guzman's Escort, presumably in an attempt to avoid apprehension and to conceal his truck from law enforcement. Unlike *Stahmann*, in the present case, there were no eyewitnesses to the event and officers were unable to immediately locate Appellant's truck after the collision or after they discovered Appellant's involvement in the collision through the ensuing investigation. *See Stahmann*, 602 S.W.3d at 581. Through their investigation, officers were eventually able to locate the truck at a distant location from Appellant's house after searching for the truck at several other places for almost two weeks. From this evidence, a jury could have rationally inferred that after being involved in the collision, Appellant

10

moved the truck from his house to his father's house at the far outskirts of the county outside EPPD jurisdiction, where it would have been more difficult for law enforcement to find. And although the truck was visible from the street, the license plates associated with the truck's registration had been removed and replaced with a different license plate when officers located the truck, suggesting Appellant intended to conceal the truck's identity from officers who could drive by the truck and check its license plates through their investigation.

Combined with the aforementioned evidence establishing Appellant's knowledge of a pending investigation into the collision involving his truck, the jury could have rationally concluded that Appellant intentionally impaired the truck's availability in an investigation and actually concealed the truck by parking it at his father's house, a location where it would be "hidden, removed from sight or notice, or kept from discovery or observation." *See Stahmann*, 548 S.W.3d at 57. Viewing the evidence in the light most favorable to the verdict, we conclude that legally sufficient evidence supports the jury's finding that Appellant concealed the truck. *See* TEX. PENAL CODE ANN. § 37.09(a)(1); *Nguyen*, 2022 WL 17997087, at *3 (defendant's admission that he discarded a firearm used in a crime in a remote location and law enforcement's subsequent difficulties in locating the firearm constituted legally sufficient evidence to establish concealment under Section 37.09(a)(1)).

Accordingly, we overrule Appellant's third issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, we address Appellant's first and second issues in which he argues he is entitled to a new trial because his trial attorney rendered ineffective assistance of counsel by (1) failing to file a motion to suppress evidence associated with the search and seizure of his truck and (2) failing to object to the prosecutor's improper closing arguments.

## A. Standard of review and applicable law

We review claims of ineffective assistance of counsel under the *Strickland v. Washington* standard. *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under this standard, a defendant must show both that trial counsel's performance was deficient and the deficient performance prejudiced the defense. *See id.* (citing *Strickland*, 466 U.S. at 687). "An attorney's performance is deficient if it is not within the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms[.]" *Id.* (citing *Strickland*, 466 U.S. at 689). "We indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable assistance, and that the challenged action might be considered sound trial strategy." *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004) (citation and internal quotation marks omitted). To show prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant bears the burden of proving that trial counsel was ineffective. *Strickland*, 466 U.S. at 694; *see Bone*, 77 S.W.3d at 833. A defendant's failure to show either deficient performance or prejudice will defeat his claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

"Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone*, 77 S.W.3d at 833. Thus, although it is possible to raise claims of ineffective assistance of counsel

on direct appeal, such claims are more effectively raised in habeas proceedings because the record in direct appeals are usually inadequate to determine whether trial counsel acted in a matter consistent with a reasonable trial strategy. *See id.*; *Ex parte White*, 160 S.W.3d at 49 n.1. "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava*, 415 S.W.3d at 309 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)).

## B.   Failure to file a motion to suppress

We first consider Appellant's claim that he received ineffective assistance of counsel through defense counsel's failure to file a motion to suppress the evidence associated with the search and seizure of Appellant's truck. Appellant contends that although Appellant's father granted the officers permission to search and seize the truck, Appellant's father lacked authority to do so because he "did not exercise equal control over and equal use of the truck" with Appellant. Appellant cites no case law or statutory law supporting his argument that his motion to suppress would have been granted on this basis.

To prevail on this part of his claim, Appellant must establish that his motion to suppress would have been granted. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) ("[T]he [defendant is] . . . obliged to prove that a motion to suppress would have been granted in order to satisfy *Strickland*."). Particularly, Appellant must show that the truck was actually searched without a valid warrant and that none of the exceptions to the warrant requirement applied in this case. *See Mitchell v. State*, No. 09-17-00141-CR, 2018 WL 5020078, at *3 (Tex. App.— Beaumont Oct. 17, 2018, no pet.) (mem. op., not designated for publication) (citing *Jackson*, 973 S.W.2d at 957). Appellant did not claim at trial that his truck was searched without a warrant, and

13

although he filed a motion for a new trial, his written motion only asserts that he was entitled to a new trial "in the interest of justice." The trial court did not hold a hearing on Appellant's motion, which was overruled by operation of law.

As such, the record before us is insufficiently developed on Appellant's claim, and we can only speculate about defense counsel's strategy in not filing a motion to suppress or about whether Appellant's truck was actually searched without a warrant. We cannot find that Appellant has defeated the "strong presumption" that defense counsel's decision to not file a motion to suppress was reasonable. *See Ex parte White*, 160 S.W.3d at 51. Nor can we conclude that trial counsel's failure to file a motion to suppress prejudiced Appellant's defense.

Because Appellant cannot establish that trial counsel was deficient in his performance or that his defense was prejudiced by counsel's purportedly deficient performance, Appellant's claim of ineffective assistance of counsel must fail. *See Nava*, 415 S.W.3d at 307 (defendant must prove both deficiency and prejudice to prevail on a claim of ineffective assistance of counsel); *see also Mitchell*, 2018 WL 5020078, at *3 (rejecting defendant's claim of ineffective assistance of counsel based on trial counsel's failure to file a motion to suppress for lack of a search warrant because defendant did not claim at trial that police obtained his blood without a search warrant, defendant did not elicit evidence regarding defense counsel's trial strategy through a motion for new trial, and nothing in the record indicated that no search warrant for the defendant's blood issued).[5]

---

[5] In fact, the record suggests that a search warrant did issue for a search of Appellant's truck. Appellant's Facebook records, which the State introduced into evidence at trial, contain a message from Gus Rivas to Appellant with a screenshot of what appears to be a signed search warrant for a "black and silver 2002 Dodge Ram bearing Texas registration GMH6540, . . . registered to Alex Cisneros, [address redacted] Stable Rd., El Paso, TX[.]" The search warrant states that the truck "is located at [address redacted] Soleen, El Paso, TX, 79938" and will be moved to the Municipal Vehicle Storage Facility to search for personal property stated in the affidavit. A magistrate appears to have signed the warrant using a blue-ink pen on December 4, 2015. After sending the message containing the photograph of the warrant, Rivas sent another message to Appellant stating "they wouldn't give me a copy that's why I took a picture they said the paper had to stay with the car or some shit like that" and that he was suspicious because the officers did not provide him a physical copy of the warrant.

Accordingly, we overrule Appellant's first issue.

## C. Failure to object to the prosecutor's jury arguments

Next, we consider whether trial counsel rendered ineffective assistance of counsel through his failure to object to the prosecutor's closing arguments that (1) Appellant should have been charged with intoxication manslaughter and (2) Appellant would not have been caught except "for the grace of God."

### (1) Applicable law

Proper jury argument generally falls within one of four areas: (1) summations of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010). We must examine the challenged jury argument in the context in which it appears. *Jackson v. State*, 17 S.W.3d 664, 675 (Tex. Crim. App. 2000).

### (2) Argument regarding intoxication manslaughter

Appellant first contends that in closing argument at the punishment phase of trial, the prosecutor improperly argued that Appellant should have been charged with intoxication manslaughter. *See* TEX. PENAL CODE ANN. § 49.08(a) ("A person commits an offense if the person: (1) operates a motor vehicle in a public place . . . and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake."). Appellant contends the argument falsely "suggested that intoxication manslaughter was a more serious crime than manslaughter" and that manslaughter is a lesser-included offense of intoxication manslaughter.

On appeal, Appellant's particular argument concerns the prosecutor's remark during the punishment phase of trial that "[t]his should be an intox[ication] manslaughter, but he left. He left because he doesn't want to accept responsibility or accountability. But enough is enough."

15

However, the record indicates that in her closing argument during the guilt-innocence phase of trial, the prosecutor previously argued, "And I asked you to remember his motive, why he left. Because he was drunk. And this should be an intox[ication] manslaughter." Defense counsel objected on the ground that the argument was outside the evidence. The prosecutor responded that Appellant's intoxication was a reasonable inference from the evidence because his Facebook messages showed that when Peña asked him if he was drunk when he crashed his truck, Appellant responded, "Not completely." The trial court overruled defense counsel's objection. Given the evidence in the record suggesting Appellant's intoxication during the collision, defense counsel could have reasonably concluded that the prosecutor's remark was a reasonable deduction from the evidence, which is an area of permissible jury argument. *See Davis*, 329 S.W.3d at 821 (reasonable deductions from the evidence constitute proper jury argument). Moreover, because the trial court had already overruled his objection on the same ground, defense counsel could have concluded that any further objection on this basis would have been overruled again for the same reason. Because defense counsel is not deficient for failing to lodge an objection that would have been fruitless, Appellant has not rebutted the presumption that defense counsel's decision to not object to the prosecutor's argument was reasonable. *See Martinez v. State*, No. 08-19-00271-CR, 2021 WL 1207737, at *10 (Tex. App.—El Paso Mar. 31, 2021, no pet.) (not designated for publication) (recognizing that deficient performance under *Strickland* cannot be shown where an objection that defense counsel purportedly should have made would have been correctly overruled).

Because he has not shown defense counsel's deficient performance on this basis, Appellant's ineffective-assistance claim must fail and we need not address whether Appellant was prejudiced by the purported deficiency. *See Perez*, 310 S.W.3d at 893 (defendant's failure to show

either deficient performance or prejudice will defeat his claim of ineffective assistance of counsel); *see also Nelson v. State*, No. 05-18-00890-CR, 2020 WL 4034962, at *4 (Tex. App.—Dallas July 17, 2020, pet. ref'd) (mem. op., not designated for publication) (defendant failed to establish deficiency based on defense counsel's failure to object to the admission of evidence because defense counsel could have concluded that the evidence was admissible and that any objection on that basis would be fruitless); *Kalluvilayil v. State*, No. 05-91-00461-CR, 1992 WL 141385, at *4 (Tex. App.—Dallas June 22, 1992, no writ) (op. on reh'g) (not designated for publication) (defense counsel did not render deficient performance by failing to object to the admission of evidence where the same objection had previously been overruled on the same basis, reasoning that defense counsel could have reasonably concluded that further objection on the same basis would be fruitless and would unnecessarily delay the trial).

### (3) Argument regarding "for the grace of God" reference

Appellant also argues that defense counsel rendered ineffective assistance by failing to object to the prosecutor's closing argument that Appellant was apprehended for the offenses "for the grace of God." Appellant contends that the reference to God violated the Establishment Clause of the First Amendment, causing Appellant to undergo an unfair trial. *See* U.S. CONST. AMEND. I.

Invoking God's name may constitute improper jury argument if an attorney makes gratuitous references to God or asks the jury to base its decision on "divine retribution." *Amaro v. State*, No. 08-14-00052-CR, 2016 WL 3344568, *5 (Tex. App.—El Paso June 14, 2016, no pet.) (not designated for publication). However, a reviewing court should consider the context in which an attorney made the reference to God. *See id.*; *Jackson*, 17 S.W.3d at 675 (we consider jury arguments in the context in which they are made).

Here, the prosecutor argued during the punishment phase of trial as follows.

17

> [T]he first person to know that the individual needed help was the defendant, and he made a choice. He made a choice to leave him there. Right before the holidays, just to leave him there. And if it—if it wasn't for the grace of God, we never would have caught him. And he would have been okay with it. If it wasn't for his neighbor, we never would have figured it out, we never would have solved this case, and he would have successfully concealed his vehicle because he had done so for 12 days. That's the kind of man he is.

Considered in context, we do not find that the prosecutor intended to invoke God to inflame the passions of the jury or tempt the jury to base its decision on divine retribution. Instead, the prosecutor used "for the grace of God" as an idiom in common parlance to express gratefulness that Appellant was apprehended despite his attempts to conceal his truck and avoid responsibility. *See (there) but for the grace of God (go I)*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/but%20for%20the%20grace%20of%20god (last visited June 22, 2023) (defining the phrase usage as "to say that one could be in the same bad situation as someone else").

Because nothing in the record indicates that the prosecutor intended to invoke God to stoke the jurors' passions or entice them to render a decision on an improper basis, we conclude that Appellant has not established he was prejudiced by the purported deficiency through defense counsel's failure to object to the prosecutor's argument. Having found that Appellant did not establish prejudice, we need not address whether defense counsel rendered deficient performance by failing to object on this basis. *See Amaro*, 2016 WL 3344568, at *5 (prosecutor's argument that the jury had taken an "oath before God to convict" was not sufficiently prejudicial as to warrant a mistrial because, inter alia, the prosecutor "did not invoke God's name in an attempt to prejudice [the defendant's] case or to arouse the passion of the jurors, nor did he suggest the jury should base its verdict on any notion of 'divine retribution.'").[6]

---

[6] Appellant compares this case to *Wilson v. State*, where the Court of Criminal Appeals reversed the defendant's conviction and ordered a new trial when the prosecutor argued during closing argument that he had "taken a very sacred oath . . . to see that justice is done," and that "[Defense Counsel] has no such oath." 938 S.W.2d 57, 58 (Tex.

18

Accordingly, we overrule Appellant's second issue.

## IV. CONCLUSION

We affirm the judgments supporting Appellant's convictions.

LISA J. SOTO, Justice

June 26, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

---

Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002). In reversing the conviction, the court reasoned that the prosecutor had injected facts about his oath into the record and had improperly struck at the defendant over the shoulders of defense counsel, which served to inflame the jury's passions and prejudiced the defendant. *Id.* at 59–60. Here, nothing in the record indicates that the prosecutor attempted to prejudice Appellant by attacking defense counsel or attempting to undermine his role as Appellant's attorney, therefore *Wilson* is inapposite.